UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SILVIA BURLEY, as chairperson of the California Valley Miwok Tribe; and the CALIFORNIA VALLEY MIWOK TRIBE, as a federally recognized tribe of the Miwok people,<br><br>    Plaintiffs,<br><br>    v.<br><br>ONEWEST BANK, FSB; MERIDIAN FORECLOSURE SERVICE; DEUTSCHE BANK NATIONAL TRUST COMPANY; and DOES 1-10, inclusive,<br><br>    Defendants. | MEMORANDUM AND ORDER RE: SUBJECT MATTER JURISDICTION<br><br><br><br>CIV. NO. 2:14-1349 WBS EFB |
| DEUTSCHE BANK NATIONAL TRUST COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>SILVIA BURLEY; ANJELICA PAULK; TYLER PAULK; RASHEL REZNOR; MILDRED BURLEY; and TRISTIAN WALLACE, | CIV. NO. 2:14-1567 WBS EFB |

1

Defendants.

----oo0oo----

On July 31, 2014, the court issued an Order to Show Cause why these actions should not be dismissed for lack of subject matter jurisdiction. Having considered the parties' submissions in response to that Order, the court will dismiss the first action, Burley v. OneWest Bank, FSB, Civ. No. 2:14-1349 WBS EFB, for lack of jurisdiction, and will remand the second action, Deutsche Bank National Trust Co. v. Burley, Civ. No. 2:14-1567 WBS EFB, to San Joaquin County Superior Court pursuant to 28 U.S.C. § 1447.

I.  Factual & Procedural History[1]

Silvia Burley is the chairperson of the California Valley Miwok Tribe ("the Tribe"), which is a federally-recognized Indian tribe. (Compl. ¶¶ 12-13.) In 2002, the Tribe purchased a parcel of land in Stockton, California. (Id. ¶ 16.) Shortly after doing so, the Tribe issued a resolution authorizing Burley to obtain a loan for the property and to take title to the property on behalf of the Tribe. (Id. ¶ 17.) Burley refinanced the property on behalf of the Tribe in 2006 and 2007, and quitclaimed the property to the Tribe in 2008. (Id. ¶¶ 19-24.)

Burley and the Tribe allege that they are waiting for funds owed to them by the Revenue Sharing Trust Fund[2] and that

---

[1] Except where otherwise noted, the court draws its account of the factual and procedural history from the Complaint in the Burley v. OneWest Bank, FSB action. (Docket No. 1.)

1  the California Gambling Control Commission is holding $10 million
2  in escrow on behalf of the Tribe.  (Id. ¶ 33.)  In the meantime,
3  however, Burley and the Tribe failed to make payments on the
4  property.  (See id. ¶ 34.)  As a result, OneWest Bank, FSB
5  ("OneWest") recorded a Notice of Default on February 19, 2010 and
6  initiated foreclosure proceedings.  (Id.)  A Trustee's Deed Upon
7  Sale recorded in San Joaquin County on November 6, 2013 reflects
8  that Deutsche Bank National Trust Company ("Deutsche Bank")
9  purchased the property at a foreclosure sale.  (Id. ¶ 41.)

10  These events precipitated two separate lawsuits.  In
11 the first case, Burley and the Tribe sued OneWest, Deutsche Bank,
12 and Meridian Foreclosure Service in this court, asserting a
13 federal claim for "violation of tribal immunity" and six state-
14 law claims.  (Docket No. 1.)  In the second case, Deutsche Bank
15 filed an unlawful detainer action in San Joaquin County Superior
16 Court against Burley and several members of the Tribe, who
17 subsequently removed on the basis that the action implicated the
18 Tribe's sovereign immunity and thereby arose under federal law.
19 (Notice of Removal, Civ. No. 2:14-1567 (Docket No. 1).)  The
20 court related the cases pursuant to Local Rule 123 and ordered
21 the parties to show cause why it should exercise jurisdiction in
22 either action.

23 II.  Discussion

24  Federal courts are courts of limited jurisdiction and
25 may exercise only that power authorized by the Constitution or

---

[2]  The Revenue Sharing Trust Fund redistributes money from Indian tribes in California that operate gaming establishments to those, like the Tribe, that do not.  (See id. ¶ 33.)

1 statute.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S.
2 546, 552 (2005); K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d
3 1024, 1027 (9th Cir. 2011).  Jurisdictional defects may not be
4 waived, and the court has an independent and continuing
5 obligation to ensure that it may exercise jurisdiction over the
6 action.  Mashiri v. Dep't of Educ., 724 F.3d 1028, 1031 (9th Cir.
7 2013).

8         As a preliminary matter, there is no basis for
9 diversity jurisdiction in either action.  Federal courts have
10 original jurisdiction over actions between citizens of different
11 states in which the amount in controversy exceeds $75,000
12 exclusive of interest and costs.  28 U.S.C. § 1332(a); Allapattah
13 Services, 545 U.S. at 552.  Because OneWest Bank has its
14 principal place of business in California, it is a citizen of
15 California and is not diverse from plaintiffs, who are citizens
16 of California.  See 28 U.S.C. § 1332(c).  And while Deutsche
17 Bank is diverse from each of the defendants in its unlawful
18 detainer action, it seeks "less than $10,000" in damages, (Not.
19 of Removal Ex. 1), which fails to satisfy the $75,000 amount in
20 controversy required for diversity jurisdiction.

21         Likewise, the court does not have jurisdiction over
22 either action by virtue of the fact that the Tribe or its members
23 are parties.  There is no federal statute providing for original
24 jurisdiction over actions to which a federally recognized Indian
25 tribe is a party.  See Okla. Tax Comm'n v. Graham, 489 U.S. 838,
26 841 (1989) (noting that "Congress has expressly provided by
27 statute for removal when it desired federal courts to adjudicate
28 defenses based on federal immunities" and observing that Congress

4

had not done so with respect to tribal sovereign immunity).  And while Burley and the Tribe contend that 28 U.S.C. § 1362 confers jurisdiction, that statute only permits courts to exercise jurisdiction over actions in which an Indian tribe asserts a claim independently arising under federal law.  Gila River Indian Cmty. v. Henningson, Durham, & Richardson, 626 F.2d 708, 714 (9th Cir. 1980).  Therefore, the court may exercise jurisdiction only if either action "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

  A. Burley v. OneWest Bank, FSB

    The Supreme Court has "long held that the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (citation, alterations, and internal quotation marks omitted).  A defense is not part of a plaintiff's well-pleaded claim.  Id. (citations omitted).  Thus, a plaintiff may not satisfy the well-pleaded complaint rule on the basis of an anticipated federal-law defense, even when that defense is the central issue in the case.  Id. (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust for So. Cal., 463 U.S. 1, 14 (1983)).

    Burley and the Tribe assert that this action arises under federal law because it implicates the Tribe's sovereign immunity.  Tribal sovereign immunity is a federally-created doctrine that bars suits against Indian tribes absent a clear waiver of immunity or Congressional abrogation.  Okla. Tax Comm'n

v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991).  It is undisputable that tribal sovereign immunity may provide a federal defense to claims brought against an Indian tribe or its members.  See, e.g., Kiowa Tribe of Okla. v. Mfg. Techs, Inc., 523 U.S. 751, 754 (1998); Graham, 489 U.S. at 841 (citing Puyallup Tribe, Inc. v. Dep't of Game, 433 U.S. 165 (1977)).  But no case has recognized a freestanding claim for "violation of tribal sovereign immunity"; rather, the cases suggest that tribal sovereign immunity may enter a case "only by way of defense."  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1386 (9th Cir. 1988).  And insofar as tribal sovereign immunity operates as a defense, it is not an independent basis for federal question jurisdiction.  See id.

        Burley and the Tribe attempt to circumvent the well-pleaded complaint rule by asserting a claim for "violation of tribal immunity."  (Compl. ¶¶ 46-51.)  This claim simply asks the court to determine that defendants' efforts to foreclose on tribal property are barred by the doctrine of tribal sovereign immunity.  For instance, the last paragraph of this claim asserts that because the Tribe's "sovereign immunity extends to its governmental commercial activities, both on reservation and off . . . any suit against Silvia Burley and the tribe should be dismissed."  (Id. ¶ 51.)  And while each of plaintiffs' six state-law claims concludes with a request for damages or injunctive relief, (see id. ¶¶ 61, 70, 82, 94, 99, 107), their claim for "violation of tribal immunity" does not request any specific relief, (see id. ¶ 51).  In the absence of a request for

6

damages, an injunction, or another equitable remedy, the court construes this claim as a request for declaratory relief.

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). But while the Declaratory Judgment Act "enlarge[s] the range of remedies available in the federal courts," it "does not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); see also Franchise Tax Board, 463 U.S. at 16 ("Skelly Oil has come to stand for the proposition that, if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." (citation and internal quotation marks omitted)).

As a corollary to this principle, a federal court may exercise jurisdiction over a declaratory judgment action only if the declaratory judgment defendant could have brought an affirmative claim for relief arising under federal law. Franchise Tax Board, 463 U.S. at 16-19; Janakes v. U.S. Postal Serv., 768 F.2d 1091, 1093 (9th Cir. 1985). Because tribal sovereign immunity would enter such an action only by way of defense, see Morongo Band, 858 F.2d at 1386, the court lacks jurisdiction to declare that Burley and the Miwok Tribe are immune from suit.

Morongo Band is instructive. There, the Morongo Band of Mission Indians leased property from one of its members. 858 F.2d at 1379. The California State Board of Equalization levied

1  on funds held by the Morongo Band, which were due to the lessor
2  as rent under the lease.  Id.  The Morongo Band sued the Board in
3  federal court on the theories, among others, that the Board's
4  levy was barred by a federal statute governing liabilities
5  arising from the lease or sale of Indian tribal lands, that the
6  levy was preempted, and that it was entitled to retain the funds
7  because the lease was invalid under federal law.  Id. at 1383.
8       The Ninth Circuit held that the Morongo Band's action
9  did not arise under federal law.  It first held that none of the
10 theories alleged by the Morongo Band arose under federal law, as
11 they merely anticipated defenses that it could assert in response
12 to a coercive action by the Board to recover the money it claimed
13 it was entitled to.  Id.  The court then held that a coercive
14 action by the lessor against the Morongo Band would sound in
15 breach of contract and thereby arise under state law, even if the
16 lease "was entered into under authority conferred by federal
17 statutes."  Id. at 1385-86.  Likewise, the court held that a
18 coercive action by the Board to enforce its tax levy would arise
19 under state, not federal law.  Id.  Although the court recognized
20 that the Morongo Band's immunity to such a levy may present
21 "[f]ederal questions," it concluded that the Morongo Band's
22 assertion of its sovereign immunity was not an adequate basis for
23 jurisdiction because those "federal-law issues would arise only
24 in defense."  Id.
25      This case, like Morongo Band, arises from the ownership
26 of a piece of property by an Indian tribe and its members.  Any
27 action by defendants to recover that property would arise under
28 state law; in fact, Deutsche Bank has already filed an unlawful

detainer action in state court to remove plaintiffs from the property. See infra II.B. Although plaintiffs may wish to assert tribal sovereign immunity as a defense to a coercive action to recover the property, the existence of a federal defense does not suggest that those coercive actions--or this action--would arise under federal law. Accordingly, the court lacks jurisdiction to adjudicate plaintiffs' claim for breach of tribal immunity and, in the absence of any other basis for subject matter jurisdiction, must dismiss this action.

      B.   <u>Deutsche Bank National Trust Co. v. Burley</u>

In this case, Deutsche Bank initiated an unlawful detainer action in San Joaquin County Superior Court against Burley and several other members of the tribe, who then removed on the basis of federal question jurisdiction. In California, the owner of real property may bring an unlawful detainer action to oust an occupant of that property. See Cal. Civ. Code § 1161. There is no serious dispute that unlawful detainer claims typically arise under state law, even when they are brought against members of Indian tribes.[3] See Round Valley Indian

---

[3] The Supreme Court has suggested that "[a]n action involving an Indian tribe's--as opposed to an individual tribe member's--possessory rights of trust land would . . . create a question of federal common law." Hunter, 907 F. Supp. at 1348 (citing Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 677 (1974)). But the Tribe is not a party to Deutsche Bank's unlawful detainer action, which seeks only to remove individual members of the Tribe from the property. As such, the action does not implicate any federal interest in protecting Indian trust land and the court need not determine whether the applicability of federal common law constitutes an independent basis for jurisdiction. See Hunter, 907 F. Supp. at 1349; see generally Boyle v. United Techs. Corp., 487 U.S. 500, 504 (1988) (explaining that federal common law may provide an independent basis for federal jurisdiction only in situations involving

Housing Auth. v. Hunter, 907 F. Supp. 1343, 1348 (N.D. Cal. 1995) ("Landlord-and-tenant actions are state law issues.")  And "[b]ecause landlord-tenant disputes are matters of state law, an action for eviction cannot be the basis for federal question jurisdiction."  Id.

Relying principally upon Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), Burley and the other members of the Tribe argue that Deutsche Bank's unlawful detainer action arises under federal law because it "implicate[s] important federal rights and defenses."[4]  There, the Supreme Court held that, in certain instances, federal courts may exercise subject matter jurisdiction over a state-law claim that "necessarily raise[s] a stated federal issue" that is "actually disputed and substantial."  Id. at 314.  But Grable does not stand for the proposition that "federal courts may exercise jurisdiction over any state-law claim that 'implicate[s] significant federal issues.'"  Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund, 636 F.3d 538, 542 (9th Cir. 2011) (alteration in original) (quoting Grable, 545 U.S. at 312).  Instead, Grable permits the exercise of federal jurisdiction over a state-law claim "only if it satisfies both the well-pleaded complaint rule and passes the 'implicate[s] significant federal

---

"uniquely federal interests" and citing cases).

[4]   Burley and the other members of the Tribe also argue that this action arises under federal law because it is barred by the Tribe's sovereign immunity.  Even assuming that Burley and other members of the tribe are entitled to assert the Tribe's sovereign immunity as a defense to claims brought against them individually, the Tribe's sovereign immunity does not provide an independent basis for federal jurisdiction.  See supra II.A.

issues' test." Id. (alteration in original).

Grable illustrates the application of this rule. There, the IRS seized the plaintiff's real property in order to satisfy a tax delinquency and sold the property to the defendant. 545 U.S. at 310. The plaintiff then brought an action to quiet title to the property in which it asserted that the sale was invalid because the IRS had failed to comply with a federal statute, 26 U.S.C. § 6335(a), governing the terms of notice required before conducting such a sale. Id. at 311. While the plaintiff's claim concededly arose under state law, the Supreme Court held that federal jurisdiction was appropriate because its claim to superior title necessarily turned on the construction of federal law and implicated important issues of federal tax law. Id. at 314-16.

Here, by contrast, Deutsche Bank's unlawful detainer claim does not "necessarily raise a stated federal issue." Id. at 314. Viewed in isolation, Deutsche Bank's unlawful detainer claim does not implicate any question of federal law; although Burley and the other members of the Tribe might attempt to raise tribal sovereign immunity as a defense, Deutsche Bank's claim does not turn on that defense or any other issue of federal law.

A recent case from this district, California ex. rel Harris v. Rose, makes this point clear.[5] Civ. No. 2:13-675 LKK DAD, 2013 WL 2145968 (E.D. Cal. May 15, 2013). There, the

---

[5] As the court noted in Rose, its holding that tribal sovereign immunity was not embedded in the plaintiff's state-law causes of action is consistent with the holdings of other district courts in California. Id. at *4–5 (citing California v. Huber, Civ. No. 11-1985, 2011 WL 2976824 (N.D. Cal. July 22, 2011).

11

1  defendants attempted to remove a state-law enforcement action to
2  collect unpaid excise taxes on the sale of cigarettes on the
3  theory that the state's enforcement action necessarily implicated
4  federal limitations on a state's power to regulate the conduct of
5  individuals in Indian country.  Id. at *4.  The court held that
6  California's claims did not do so because a claim to enforce its
7  tax laws did not "require proof of the ability to regulate
8  conduct on tribal land."  Id.  Although the court anticipated
9  that the defendants may attempt to raise tribal sovereign
10 immunity as a defense to such a claim--as Burley and the other
11 members of the Tribe do here--it nonetheless held that the
12 availability of this defense was not sufficient to satisfy Grable
13 because California could prove its claims without reference to
14 federal law in the absence of such a defense.  Id.

15         As in Rose, the resolution of Deutsche Bank's unlawful
16 detainer action does not necessarily turn on any construction of
17 federal law; as a result, its unlawful detainer claim does not
18 satisfy the well-pleaded complaint rule and Grable does not
19 support jurisdiction.  See Cal. Shock, 636 F.3d at 542.
20 Accordingly, the court must remand this action to San Joaquin
21 County Superior Court.

22         IT IS THEREFORE ORDERED that the action captioned
23 Burley v. OneWest Bank, FSB, Civ. No. 2:14-1349 WBS EFB, be, and
24 the same hereby is, DISMISSED for lack of subject matter
25 jurisdiction.  Plaintiffs in that action have twenty days to file
26 an amended Complaint, if they can do so consistent with this
27 Order.

28         IT IS FURTHER ORDERED that the action captioned

<u>Deutsche Bank National Trust Co. v. Burley</u>, Civ. No. 2:14-1567 WBS EFB, be REMANDED pursuant to 28 U.S.C. § 1447.  The Clerk of the Court is hereby directed to remand this action to the Superior Court of the State of California, in and for the County of San Joaquin.

Dated:  August 25, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE