UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SILVIA BURLEY, as chairperson of the California Valley Miwok Tribe; and the CALIFORNIA VALLEY MIWOK TRIBE, as a federally recognized tribe of the Miwok people, | CIV. NO. 2:14-1349 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| ONEWEST BANK, FSB; MERIDIAN FORECLOSURE SERVICE; DEUTSCHE BANK NATIONAL TRUST COMPANY; and DOES 1-10, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiffs Silvia Burley and the California Valley Miwok Tribe ("Miwok Tribe") brought this action against defendants OneWest Bank, FSB ("OneWest"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Meridian Foreclosure Service

1

1   ("Meridian") to recover title over land and damages in connection

2   with the alleged wrongful foreclosure and sale of the plaintiffs'

3   real property.  On August 26, 2014, this court issued an order

4   ("Aug. 26, 2014 Order") dismissing plaintiffs' case for lack of

5   subject matter jurisdiction and giving plaintiffs' twenty days to

6   file an amended complaint.[1]  (Docket No. 17.)  Plaintiffs filed

7   their First Amended Complaint ("FAC") asserting claims under the

8   Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691, et

9   seq., the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et

10  seq., and several state law claims essentially repeated from

11  their original Complaint.  (Docket No. 18.)

12  I.   Factual & Procedural History

13       Burley is the chairperson of the Miwok Tribe, which is

14  a federally-recognized Indian tribe.  (FAC ¶¶ 20-21.)  On March

15  29, 2002, the Miwok Tribe purchased a parcel of land in Stockton,

16  California.  (Id. ¶ 14.)  Shortly after doing so, the Miwok Tribe

17  issued a resolution authorizing Burley to obtain a loan for the

18  property and to take title to the property on behalf of the Miwok

19  Tribe.  (Id. ¶¶ 25, 28.)  After receiving title, Burley allegedly

20  refinanced the property on behalf of the Miwok Tribe in 2006 and

21  2007, and quitclaimed the property back to the Miwok Tribe in

22  2008.  (Id. ¶¶ 19-24.)  Financing was originally provided by

23  _____

24       [1]   The August 26, 2014 Order addressed two related cases:
     Burley v. OneWest Bank, FSB, Civ. No. 2:14-1349 WBS EFB, and
     Deutsche Bank National Trust Co. v. Burley, Civ. No. 2:14-1567

25  WBS EFB.  The court dismissed the first action, Burley v. OneWest
     Bank, FSB, for lack of subject matter jurisdiction, (see Aug. 26,

26  2014 Order at 8-9), and the court remanded the second action,

27  Deutsche Bank National Trust Co. v. Burley, to the San Joaquin
     County Superior Court pursuant to 28 U.S.C. § 1447, (id at 13.)

28

2

1   IndyMac Bank ("IndyMac").  (Id. ¶ 22.)  In March 2009, after

2   IndyMac entered bankruptcy, OneWest purchased the assets of

3   IndyMac from the Federal Deposit Insurance Corporation ("FDIC"),

4   including the beneficial interest in plaintiffs' loan.  (Id. ¶

5   59)

6        Burley and the Miwok Tribe allege that they are waiting

7   for funds owed to them by the Revenue Sharing Trust Fund.[2]  (Id.

8   ¶ 46, 86.)  In the meantime, plaintiffs fell behind on loan

9   payments for the property.  (See id. ¶ 57.)  On February 19,

10  2010, OneWest recorded a Notice of Default and initiated

11  foreclosure proceedings.  (Id. ¶¶ 61, 88.)  A Trustee's Deed Upon

12  Sale recorded in San Joaquin County on November 6, 2013, reflects

13  that Deutsche Bank purchased the property at a foreclosure sale

14  for roughly one-third of the alleged amount of unpaid debt.  (Id.

15  ¶ 72.)

16       Plaintiffs allege that the terms of financing reflected

17  in the Deed of Trust filed with the Official Records of San

18  Joaquin County on April 30, 2007, are different from the terms

19  that plaintiffs had originally agreed to during discussions with

20  the defendants' representatives.  (Id. ¶ 38, 45-46.)  As a

21  result, plaintiffs contend that OneWest listed an "excessive"

22  amount on its Notice of Default, wrongfully foreclosed on the

23  property, and initiated an unlawful detainer action against

24  Burley.  (Id. ¶¶ 61, 63, 75.)  Defendants also allegedly

25  discriminated against plaintiffs during their application for the

26

27  [2]   The Revenue Sharing Trust Fund redistributes money from
    Indian tribes in California that operate gaming establishments to
28  those, like the Miwok Tribe, that do not.

1  loan, (id. ¶¶ 17, 77-79), and failed to comply with certain

2  requirements of foreclosure over tribal land, (id. ¶ 63).

3  Defendants now move to dismiss all claims in the FAC pursuant to

4  Federal Rule of Civil Procedure 12(b)(6) for failure to state a

5  claim upon which relief can be granted.  (Docket No. 22.)

6  II.  Discussion

7       On a motion to dismiss under Rule 12(b)(6), the court

8  must accept the allegations in the complaint as true and draw all

9  reasonable inferences in favor of the plaintiff.  See Scheuer v.

10 Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

11 Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S.

12 319, 322 (1972).  To survive a motion to dismiss, a plaintiff

13 must plead "only enough facts to state a claim to relief that is

14 plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

15 544, 570 (2007).  This "plausibility standard," however, "asks

16 for more than a sheer possibility that a defendant has acted

17 unlawfully," and where a plaintiff pleads facts that are "merely

18 consistent with a defendant's liability," it "stops short of the

19 line between possibility and plausibility."  Ashcroft v. Iqbal,

20 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

21      A.   Equal Credit Opportunity Act Claim

22           It is well established that "[a] district court may

23 dismiss a claim '[i]f the running of the statute is apparent on

24 the face of the complaint.'"  Cervantes v. Countrywide Home

25 Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting Jablon

26 v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)).

27 "However, a district court may do so 'only if the assertions of

28 the complaint, read with the required liberality, would not

4

1    permit the plaintiff to prove that the statute was tolled.'"   Id.

2          The ECOA prohibits a creditor from discriminating

3    against an applicant for credit "on the basis of race, color,

4    religion, national origin, sex or marital status, or age," as

5    well as use of "any public assistance program," or "because the

6    applicant has in good faith exercised any right under this

7    chapter." 15 U.S.C. § 1691(a).  The ECOA defines "applicant" as

8    "any person who applies to a creditor directly for an extension,

9    renewal, or continuation of credit, or applies to a creditor

10   indirectly by use of an existing credit plan for an amount

11   exceeding a previously established credit limit."  Id.

12   § 1691a(b).  Aggrieved applicants may bring an action for damages

13   and equitable remedies against "[a]ny creditor who fails to

14   comply with any requirement imposed" by the ECOA.  Id. § 1691e.

15         However, § 1691e(f) requires an applicant to bring any

16   claim within five years "after the date of the occurrence of the

17   violation."  Id. § 1691e(f).  The same subsection provides an

18   express exception to this limitation allowing for an applicant to

19   bring an action "not later than one year after" the commencement

20   of a proceeding or action by the Attorney General or any agency

21   having responsibility for administrative enforcement under

22   § 1691(c) against the creditor, if the Attorney General or agency

23   itself commenced its action within five years of the occurrence

24   of the violation.  Id.

25         Here, plaintiffs' FAC alleges that defendants

26   discriminated against the Miwok Tribe during its loan application

27   and refinancing.  (FAC ¶¶ 17, 77-79.)  Plaintiffs specifically

28   allege that IndyMac refused to allow the Miwok Tribe to use

5

1    property that it owned in its own name as security for that loan.

2    (See id. ¶ 79.)  Instead, IndyMac allegedly insisted that Burley

3    take title in her own name to any property used as security and

4    that her name, not the Tribe's, be used on the loan origination

5    and refinancing.  (See id.)

6         Plaintiffs' allegations in their FAC, (FAC ¶¶ 14, 44),

7    as well as the Deed of Trust dated April 20, 2007 that is

8    attached to the FAC and lists "IndyMac Bank" as the lender and

9    "Silvia Burley" as the borrower, (FAC Ex. B-7), clearly show that

10   plaintiffs refinanced the property at issue in 2007.  Because the

11   discriminatory conduct giving rise to plaintiffs' ECOA claim

12   allegedly occurred when plaintiffs sought financing through

13   IndyMac, (see FAC ¶¶ 17, 79), the alleged discrimination could

14   not have occurred later than April 20, 2007--the date Burley

15   signed the Deed of Trust on the property.

16        It is therefore clear from the face of plaintiffs' FAC

17   that the five-year statute of limitations has run on plaintiffs'

18   ECOA claim.  Under the normal five-year limitation period,

19   plaintiffs' claim ran no later than April 20, 2012.  See 15

20   U.S.C. § 1691e(f).  Even assuming that some enforcement action

21   was brought by the Attorney General or authorized agency within

22   the meaning of § 1691e(f), which plaintiffs neither allege nor

23   suggest occurred, plaintiffs would need to have commenced this

24   action no later than April 20, 2013.  Id.

25        Moreover, court finds no basis in plaintiffs' FAC that

26   might plausibly support equitable tolling in this case.  A court

27   applies equitable tolling "in situations where, despite all due

28   diligence, the party invoking equitable tolling is unable to

6

1   obtain vital information bearing on the existence of the claim."

2   Cervantes, 656 F.3d at 1045 (quoting Socop–Gonzalez v. I.N.S.,

3   272 F.3d 1176, 1193 (9th Cir. 2001)).  The plaintiffs have not

4   alleged circumstances beyond their control that prevented them

5   from discovering defendants' alleged acts of discrimination.  In

6   fact, because plaintiffs' base their claim of discrimination on

7   the fact that defendants refused to let the Miwok Tribe use its

8   own land as security for the loan, there is no question that

9   plaintiffs were aware of the alleged facts constituting their

10   claim when they applied for the loan in or before 2007.

11        Accordingly, because it is clear from plaintiffs' FAC

12   and the April 20, 2007 Deed of Trust attached to it that the

13   applicable statute of limitations for any ECOA claim based on

14   alleged discrimination during plaintiffs' application for credit

15   in 2007 ran well before plaintiffs filed this action, the court

16   must grant defendants' motion to dismiss this claim.  See

17   Cervantes, 656 F.3d at 1045-46.

18        B.   Truth In Lending Act Claim

19        Among the various obligations of creditors created by

20   TILA is the requirement that "not later than 30 days after the

21   date on which a mortgage loan is sold or otherwise transferred or

22   assigned to a third party, the creditor that is the new owner or

23   assignee of the debt shall notify the borrower in writing of such

24   transfer."  15 U.S.C. § 1641(g)(1).  Under TILA, any creditor who

25   fails to comply with the requirement to give notice to a borrower

26   of a mortgage loan sale under § 1641(g) "with respect to any

27   person is liable to such person."  Id. § 1640(a).  TILA's

28   liability provision contains a one-year statute of limitations

1    accruing from the date of the violation.  Id. § 1640(e).

2              Here, plaintiffs allege two transfers of their loan for

3    which they received no notice as required by § 1641(g)(1):

4    First, in March 2009, IndyMac allegedly transferred plaintiffs'

5    loan to OneWest.  (FAC ¶¶ 59, 168.)  Second, in June 2010, the

6    loan was allegedly transferred again to Deutsche Bank.  (Id. ¶¶

7    61, 168.)  The 30-day window in which § 1641(g)(1) required the

8    creditors to provide notice to plaintiffs of these transfers thus

9    expired in April 2009 and July 2010, respectively.

10             The statute of limitations under § 1640(e) therefore

11   ran on plaintiffs' first alleged violation in April 2010 and

12   their second alleged violation in July 2011.

13             Similar to their ECOA claim, the FAC has no allegations

14   suggesting that equitable tolling may save this claim.

15   Plaintiffs' FAC shows that plaintiffs were informed of IndyMac's

16   transfer of the loan to OneWest in February 19, 2010, when

17   OneWest recorded a Notice of Default and initiated foreclosure

18   proceedings against the property in question.  (FAC ¶ 61.)

19   Plaintiffs even attach the Notice of Default, which shows that it

20   was filed on "Fri Feb 19 08:59:52 PST 2010" with the San Joaquin

21   County Recorders and lists "OneWest Bank, FSB," along with

22   contact information for OneWest's office in San Diego, as the

23   sender.  (See id. Ex. E-15.)  Therefore, this is plainly not a

24   case where "despite all due diligence, the party invoking

25   equitable tolling is unable to obtain vital information bearing

26   on the existence of the claim."  Cervantes, 656 F.3d at 1045.

27   Plaintiffs could have easily discovered that a loan transfer had

28   taken place when the new creditor notified them of default and

1  began to foreclose the secured property.  Even if the statute of

2  limitations was tolled until February 19, 2010, the time for

3  plaintiffs to bring their TILA claim still ran in 2011.

4          Similarly, plaintiffs state in their FAC that "[o]n

5  June 21, 2010, an Assignment of Deed of Trust was recorded in the

6  Official Records of San Joaquin County . . . to grant the Deed of

7  Trust to Deutsche Bank National Trust Company, as Trustee of the

8  IndyMac INDA Mortgage Loan Trust 2007-AR3."  (FAC ¶ 66.)

9  Plaintiffs do not attach this Deed of Trust or documentation of

10  its assignment to their FAC, but the court must still assume the

11  truth of their allegation that an assignment of the Deed of Trust

12  was "recorded in the Official Records of San Joaquin County" on

13  June 21, 2010.  (Id.); see Scheuer, 416 U.S. at 236.  The FAC

14  alleges no facts that might explain why plaintiffs, exercising

15  due diligence as required by the equitable tolling standard,

16  could not have learned of the assignment of the loan to Deutsche

17  Bank at that time.  See Cervantes, 656 F.3d at 1045 (declining to

18  equitably toll a statute of limitations because "plaintiffs have

19  not alleged circumstances beyond their control" that prevented

20  them from understanding loan documents that were readily

21  accessible to them).  Therefore, the court concludes that the

22  statute of limitations ran on plaintiffs' TILA claim for this

23  alleged violation in 2011.

24          Accordingly, because the applicable statute of

25  limitations for plaintiffs' TILA claim based on these two alleged

26  violations ran before plaintiffs brought this action, the court

27  must grant defendants' motion to dismiss this claim.  See id. at

28  1045-46.

1          C.    The Court Declines to Exercise Supplemental

2    Jurisdiction Over Plaintiffs' State-Law Claims

3          Under 28 U.S.C. § 1367, a federal court may exercise

4    supplemental jurisdiction over state-law claims that are

5    sufficiently related to those claims over which they have

6    original jurisdiction.  28 U.S.C. § 1367(a); United Mine Workers

7    of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  However, a district

8    court "may decline to exercise supplemental jurisdiction over a

9    claim . . . if . . . the district court has dismissed all claims

10   over which it has original jurisdiction."  28 U.S.C.

11   § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d

12   999, 1000 (9th Cir. 1997).  In fact, the Ninth Circuit has stated

13   its preference that district courts do not exercise supplemental

14   jurisdiction over a plaintiffs' state-law claims when the court

15   has dismissed all of plaintiffs' federal-law claims before trial.

16   See Acri, 114 F.3d at 1001.

17         Accordingly, because the court will dismiss all

18   plaintiffs' federal-law claims for failure to state a claim upon

19   which relief can be granted, the court declines to exercise

20   supplemental jurisdiction over plaintiffs' remaining state-law

21   claims pursuant to 28 U.S.C. § 1367(c)(3).

22         D.    Leave to Amend

23         The decision to grant leave to amend the pleadings "is

24   within the sound discretion of the district court."  ABM Indus.,

25   Inc. v. Zurich Am. Ins. Co., 237 F.R.D. 225, 227 (N.D. Cal. 2006)

26   (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th

27   Cir. 1987)).  In exercising its discretion, Rule 15 counsels that

28   "the court should freely give leave [to amend] when justice so

1    requires."  Fed. R. Civ. P. 15(a)(2); <u>see also</u> <u>Ascon Properties,</u>

2    <u>Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989) ("We

3    have stressed Rule 15's policy of favoring amendments, and we

4    have applied this policy with liberality.").  But "leave need not

5    be granted where the amendment of the complaint would cause the

6    opposing party undue prejudice, is sought in bad faith,

7    constitutes an exercise in futility, or creates undue delay."

8    <u>Ascon Properties</u>, 866 F.2d at 1160.

9         The court dismissed plaintiffs' initial Complaint for

10   want of federal question jurisdiction,[3] and granted plaintiffs

11   leave to amend. (<u>See</u> Aug. 26, 2014 Order at 9.)  Plaintiffs

12   responded by filing the instant FAC, which abandons the claim

13   upon which they originally predicated federal jurisdiction and

14   substitutes two, new, federal claims for violations of the ECOA

15   and TILA.  The court now dismisses these two federal claims for

16   failure to state a claim upon which relief can be granted.

17        Having already given leave to amend once, the court has

18   granted plaintiffs ample opportunity present their best federal

19   claims to support jurisdiction in this court.  However, because

20   plaintiffs have raised their new federal claims under the ECOA

21   and TILA for the first time in their FAC, the court will afford

22   _____

23        [3]    The parties do not have diversity of citizenship that
     would allow this court to exercise subject matter jurisdiction
24   pursuant to 28 U.S.C. § 1332, as Burley is a citizen of
     California, the Miwok Tribe is a federally-recognized tribal
25   organization located in the San Joaquin Valley of California, and
     defendant OneWest is a federal savings bank with its principal
26   place of business in California.  (FAC ¶¶ 20-22; <u>see</u> August 26,
     2014 Order at 4); 28 U.S.C. § 1332 ("[A] corporation shall be
27   deemed to be a citizen of every State and foreign state . . .
     where it has its principal place of business.").
28

1   them one more opportunity to amend <u>those claims and only those</u>

2   <u>claims</u> to state a claim upon which relief can be granted.  Leave

3   is not granted to add new or additional claims not included in

4   the FAC.

5           IT IS THEREFORE ORDERED that OneWest Bank, FSB and

6   Deutsche Bank National Trust Company's motion to dismiss, be, and

7   the same hereby is, GRANTED.

8           Plaintiffs have twenty days to file a second amended

9   Complaint, addressing the deficiencies in their claims for an

10  ECOA violation and/or TILA violation, if they can do so

11  consistent with this Order.

12  Dated:  December 2, 2014

13  _____

14  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28